Case 6:17-cv-00047-NKM-RSB Document 25 Filed 08/13/18 Page 1 of 13
Pageid#: 734

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/13/2018

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| LEW M.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:17-cv-47 |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | By: Hon. Robert S. Ballou |
| Acting Commissioner of Social Security, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lew M. ("Lew") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Lew alleges that the ALJ: (1) failed to give controlling weight to the opinion of Lew's treating physician; and (2) improperly discounted Lew's credibility. Further, Lew submitted additional evidence to the Appeals Council that she argues justifies remand. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Lew's Motion for Summary Judgment (Dkt. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Lew failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lew filed for DIB on July 19, 2013, claiming that her disability began on January 15, 2012. R. 215–17. The Commissioner denied Lew's application at the initial and reconsideration levels of administrative review. R. 138, 149. On November 17, 2015, ALJ R. Neely Owen held a hearing to consider Lew's disability claim. R. 101–31. Lew was represented by an attorney at the hearing, which included testimony from Lew and vocational expert Andrew Beale. Id.

On January 21, 2016, the ALJ entered his decision analyzing Lew's claim under the familiar five-step process,[3] and denied Lew's claim for benefits. R. 65–77. The ALJ found that Lew suffered from the severe impairments of degenerative disc disease and radiculopathy. R. 67.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ found that Lew retained the residual functional capacity ("RFC") to perform light work, except that she can: (1) frequently climb ramps and stairs; and (2) occasionally stoop, kneel, crawl, and climb ladders, ropes, and scaffolds. R. 69. The ALJ determined that Lew could return to her past relevant work as a bench assembler. R. 75. Nevertheless, the ALJ concluded that Lew could work at other jobs that exist in significant numbers in the national economy such as ticketer, cleaner, and clerical worker. R. 76. Thus, the ALJ found Lew not disabled. R. 77.

Lew appealed the ALJ's decision to the Appeals Council and submitted additional evidence. R. 10–25, 29–59, 85–100, 214. On July 25, 2016, the Appeals Council denied Lew's request for review. R. 1–6. This appeal followed.

## ANALYSIS

Lew challenges the ALJ's decision on two grounds, claiming that the ALJ: (1) failed to give controlling weight to the opinion of her treating physician; and (2) improperly discounted her credibility. Lew also alleges that the Appeals Council's decision declining to consider additional evidence warrants remand.

### Treating Physician

Lew claims that the ALJ erred when he accorded less weight to her treating physician, Dr. Todd Delhi. The ALJ explained that the opinion of Lew's treating physician "is not supported by the longitudinal record with its limited physical findings and generally routine and conservative treatment, including his own treatment notes." R. 75.

On October 27, 2014, Dr. Dehli provided the opinion that Lew can lift and carry five pounds, stand and walk for less than two hours in an eight-hour workday, and sit for two hours in an eight-hour workday. R. 376–77. Dr. Dehli stated that Lew can never climb, balance, kneel, crouch, crawl, or stoop. R. 377. Dr. Dehli explained that Lew is limited in pushing and pulling

3

with the upper extremities, and experiences numbness, pain, and weakness in the right upper and lower extremities. Id. Dr. Dehli stated that Lew is limited with reaching and feeling on the right, can only handle things occasionally, and is limited with hazards. R. 378–79. Dr. Dehli explained that Lew would be absent from work more than three times a month. R. 379. The ALJ gave little weight to Dr. Delhi's opinion. R. 75.

The first documented report of lower back pain in the record occurred on May 9, 2012, when Lew saw Todd Dehli, M.D. R. 331. Lew explained that her lower back pain is exacerbated by prolonged sitting and standing. Id. Dr. Dehli prescribed pain medication. R. 332.

On October 1, 2012, Lew complained of pain in her lower back and right lower extremities to Jocelyn Idema, D.O. R. 323. Dr. Idema recommended an epidural steroid injection at L-5, which Lew received on October 4, 2012. R. 315.

Lew did not seek medical treatment for her back pain for ten months. On July 31, 2013, Dr. Dehli diagnosed chronic pain and muscle tenderness, but noted normal reflexes and strength. Dr. Dehli referred Lew to pain management and prescribed Lortab, Neurontin, and Zanaflex. Id.

In February 2014, Lew had normal reflexes and strength. R. 352–53. Dr. Dehli continued Lew on her medications and pain management. Id.

On March 24, 2014, Lew saw Dr. Marc Swanson, M.D., for pain management, and she stated that pain medication and epidural steroids were effective in relieving pain, but stated that she has not had any recent injections. R. 360 Dr. Swanson administered a lower back epidural injection, which she tolerated well. R. 365. Lew returned to Dr. Swanson in June 2014 and received another injection. R. 539. Dr. Swanson noted normal strength, normal gait, and the "[ability] to stand without difficulty." R. 543. Lew saw Dr. Swanson again in August 2014, and received a right sacroliliac joint injection. R. 549.

4

Lew saw neurologist Johanne Personna-Policard, M.D., in September 2014. On physical examination, Lew had normal strength, reflexes, and gait. R. 406–07. Lew had a cervical spine MRI on September 29, 2014, which showed degenerative disc disease of the mid and low cervical spine. R. 473.

Lew reported increased pain to Dr. Swanson in October 2014. R. 550. Dr. Swanson noted that pain medications and injections were effective in the past. Id. Dr. Swanson continued Lew on her pain medications, discussed changes in diet, recommended exercise and core stabilization training, and referred her to physical therapy. R. 553.

In December 2014, Lew reported that physical therapy did not alleviate her pain. R. 398. Lew's strength was normal in all extremities. Id. Lew saw Dr. Personna-Policard later that month, and reported back pain. R. 393. Dr. Personna-Policard explained that Lew's back pain improved minimally with medications. R. 393. On examination, Lew had normal sensation, gait, and strength in all extremities. R. 393–95. Dr. Personna-Policard prescribed prednisone, which she indicated had previously helped. R. 395.

In January 2015, Lew saw Matthew Holland, M.D., and reported that her lower back pain is constant and not alleviated by epidural injections. R. 483. Lew described her pain as an 8/10 and is exacerbated by physical activity. Id. On examination, Lew had normal strength, sensation, reflexes, range of motion, and gait. R. 485. Dr. Holland administered two right lower lumbar diagnostic medial branch nerve block injections later that month, which were successful. R. 491, 506, 514. Lew returned to Dr. Holland on February 11, 2015, and rated her pain as a 4/10. R. 506. Dr. Holland administered a successful lumbar facet joint radiofrequency ablation that day. R. 509–10.

Lew returned to Dr. Holland in March 2015, reporting that her pain was a 5/10. R. 502. Dr. Holland found normal gait, reflexes, coordination, and strength. R. 503–04. Dr. Holland explained that Lew's pain severity decreased through his treatment, and that Lew now experiences pain less frequently. R. 504. Dr. Holland recommended physical therapy, a lumbar stabilization brace, and a gradual decrease in pain medications. Id. In May 2015, Lew reported to Dr. Holland that her pain was currently a 3/10 and a 4/10 on average. R. 496.

Lew did not seek medical treatment for her lower back pain until September 2015, when Dr. Holland administered a successful lumbar facet joint radiofrequency ablation of the right L4/L5 and L5/S1 facet joints. R. 602–03. Lew rated her pain before the procedure as 5/10 with an average of 4/10. R. 601.

The opinion evidence as to Lew's ability to work other than from Dr. Dehli came from the state agency physicians. On December 17, 2013, at the initial level of administrative review, James Wickham, M.D., stated that Lew can frequently lift and carry ten pounds, occasionally lift and carry 20 pounds, and walk, stand, and sit for six hours in an eight-hour workday. R. 136. Dr. Wickham noted that Lew can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds. Id. Further, Dr. Wickham found that Lew can frequently climb ramps and stairs and has an unlimited ability to balance. Id. On August 11, 2014, at the reconsideration level of administrative review, R.S. Kadian, M.D., concurred with Dr. Wickham's findings. R. 147–48. The ALJ gave greater weight to these opinions, explaining that they are "consistent with the other credible evidence of record, including treatment notes and imagery and testing results." R. 75.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in

[the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

      The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Lew asserts that "[t]he opinions of Dr. Dehli are supported by both clinical and laboratory findings and are consistent with other substantial evidence in the record and consequently, the ALJ should have given his opinions greater weight." Dkt. 16, at 14. The ALJ included a detailed review of Lew's medical history and identified objective evidence inconsistent with Dr. Dehli's opinion. See R. 69–75. The ALJ noted that, during the relevant period,[4] "[Lew's] treatment has been generally routine, conservative and unremarkable, and no surgery has been recommended." R. 74. The ALJ explained that Lew reported that injections were effective. Id. The ALJ noted that, "[n]one of the imagery or testing evidence provides objective support for an impairment that could reasonably produce the extent or intensity of [Lew's] expression of subjective symptoms." Id. The ALJ ultimately concluded that Dr. Dehli's opinion was inconsistent with the objective medical evidence.

Substantial evidence supports the ALJ's finding that Dr. Dehli's opinion is inconsistent with the objective medical evidence in the record as well as the ALJ's decision to accord more weight to the opinions of state agency medical consultants Drs. Kadian and Wickham. Lew's treatment was conservative and pain medication and lumbar injections proved effective. As a result, Lew reported to her doctors that her lower back pain frequency and severity steadily decreased. Lew consistently had normal muscle strength, balance, and reflexes. Lew wrote in her function report and testified at her administrative hearing that she engages in many daily activities that the ALJ found inconsistent with Dr. Dehli's restrictive opinion, such as farming activities, yard work, gardening, cleaning, shopping, and preparing meals. R. 74, 249–55, 379–86.

---

[4] The relevant period is the alleged date of onset, January 15, 2012, through the date of the ALJ's decision, January 21, 2016.

Unlike Brown, the ALJ here did not "rel[y] on cherry-picked evidence skewed to contradict [Lew's] doctors." Brown, 873 F.3d at 267. The ALJ laid out Lew's medical history in detail, explained the opinions of her treating physician and the state agency medical consultants, and ultimately ruled that the opinion of her treating physician was inconsistent with the objective medical evidence while the opinions of the state agency medical consultants were not. Here, substantial evidence supports the ALJ's decision to give more weight to the opinions of Drs. Wickham and Kadian and less weight to the opinion of Dr. Dehli.

**Credibility**[5]

Lew contends that the ALJ's assessment of her credibility is not supported by substantial evidence. Specifically, she claims that "the ALJ . . . fail[ed] to acknowledge the extent of the activities described by [Lew] and that she can only perform activities on an intermittent basis or not at all, or with assistance from others." Dkt. 16, at 19.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Lew's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Lew's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

whole. See 20 C.F.R. § 404.1529. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4p; SSR 96-7p.

In evaluating the credibility of Lew's subjective complaints, the ALJ fully discussed her medical history, daily activities, and the opinions of treating and non-treating physicians. The ALJ discussed Lew's daily activities of cooking, cleaning, performing yard work, performing farm work such as raising chickens, gardening, sewing, shopping, and driving. R. 74. The ALJ found that these activities were "inconsistent[] for one who is asserting she is completely disabled, which undermines [Lew's] credibility." R. 74; see also Dolfax v. Astrue, 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))). Because an ALJ's finding of credibility is to be given great weight by a reviewing court, see Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984), I find that substantial evidence supports the ALJ's finding that Lew's allegations regarding her limited activities are not entirely credible.

**Additional Evidence**

Lew requests remand because "[t]he evidence submitted to the Appeals Council is new, material, and relevant to the issues that were before the ALJ at the time he rendered his decision." Dkt. 16, at 20. On February 2, 2017, the Appeals Council granted a 25-day extension and allowed Lew to submit new and material evidence during this time. R. 60. Lew submitted three additional treatment records relating to a lumbar MRI on January 16, 2016, and back surgery on November 11, 2016. R. 2. The Appeals Council stated that the "additional evidence

10

does not relate to the period at issue" and therefore "does not affect the decision about whether you were disabled beginning on or before December 31, 2014." Id.

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. 20 C.F.R. § 404.970(b). Evidence is new if it is not duplicative or cumulative and "relates to the period on or before the date of the [ALJ's] hearing decision." Meyer v. Astrue, 662 F.3d 700, 704–05 (4th Cir. 2011) (citing 20 C.F.R. § 416.1470(b)). Evidence is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Id. at 705 (citing Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)).

This Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, the Court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. See id. Upon review of records that were before the ALJ and were submitted to the Appeals Council, the Court must determine whether substantial evidence supports the ALJ's decision and whether the submitted evidence may change his conclusion. See Hollar v. Comm'r Soc. Sec. Admin., 194 F.3d 1304, at *2 (4th Cir. 1999) (citing Browning v. Sullivan, 958 F.2d 817, 822–23 (8th Cir. 1992)).

11

Here, the additional records span the period of January 2016 to February 2017. R. 10–25, 29–59, 85–100. In January 2016, Lew had a lumbar MRI which revealed bulging lumbar discs at L5-S1 and degenerative disc disease. R. 53, 57. In August 2016, Dr. Herron recommended that Lew undergo spinal surgery. R. 53. Lew underwent a right L5-S1 laminectomy/foraminotomy/diskectomy on November 11, 2016. R. 84–100. At a check-up in February 2017, Lew explained to Dr. Herron that her pain was a 3/10. R. 10.

I need not decide whether the additional evidence relates to the relevant period as I find that the evidence is not material to Lew's claim. The evidence shows that Lew still experiences lower back pain that she rates as a 3/10, but "[a]n individual does not have to be pain-free in order to be found 'not disabled.'" Hays, 907 F.2d at 1457–48. Although the November 2017 back surgery contradicts the ALJ's statement that Lew's "treatment has been generally routine, conservative and unremarkable, and no surgery has been recommended," R. 74, knowledge of the surgery likely would not have altered the ALJ's decision. The surgery reduced Lew's pain from the 4/10 average rating in March 2015 to a 3/10 in February 2017. The new evidence presented to the Appeals Council does not indicate that Lew is more impaired than she was during the relevant period. In fact, Lew reported that the surgery helped her pain. R.10. Therefore, I find that the additional evidence does not warrant remand.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend **DENYING** Lew's motion for summary judgment and **GRANTING** the Commissioner's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

                                         Entered: August 13, 2018

*Robert S. Ballou*

                                         Robert S. Ballou
                                         United States Magistrate Judge